**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOMMY LEE JONES,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>S. MERENDINO,<br><br>　　　　　　Respondent. | Civil Action No. 23-89 (KMW)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court on Petitioner Tommy Lee Jones's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (ECF No. 1), which seeks to challenge a prison disciplinary sanction. Following an order to answer, the Government filed a response to the petition (ECF No. 5), to which Petitioner replied. (ECF No. 6.) For the reasons expressed below, Petitioner's habeas petition is denied.

**I.　　BACKGROUND**

Petitioner is a convicted federal prisoner currently imprisoned in FCI Fairton. In his current habeas petition, he seeks to challenge the outcome of a prison disciplinary hearing at which he was sanctioned with the loss of 41 days of good conduct time as a result of his failure to provide a urine sample for random drug screening within a two hour time frame. (*See* ECF No. 5-7.) Petitioner's charges arise out of an incident which occurred on February 3, 2022. (ECF No. 5-4 at 2.) On that date, Petitioner was informed at approximately 6:30 p.m. that he was to be the subject of urinalysis

screening pursuant to BOP random drug screening rules. (*Id.*) He was told that he had two hours to provide a urine sample, but was unable to provide a sample within the two hour time frame. (*Id.*) Petitioner contends that this failure was due to issues with urinating he suffers as a result of medication that he takes as well as anxiety issues. (*See* ECF No. 1 at 9-11.)

On February 2, 2022, Petitioner was provided with a copy of the incident report charging him with failure to provide a urine sample, was advised of his rights and signed a form acknowledging his rights in the resulting proceedings. (ECF Nos. 5-4, 5-5.) The following day, Petitioner appeared before a unit discipline committee and was referred for a hearing before a disciplinary hearing officer ("DHO"). (*Id.*) The DHO held that hearing on February 24, 2022. (ECF No. 5-7 at 2.) In his own defense, Petitioner informed the officer that he doesn't "do drugs" and couldn't urinate because of anxiety and medical issues. (*Id.* at 2.) Petitioner also provided written statements from two other inmates who also stated that Petitioner had mental and medical issues which made it hard for him to urinate and that Petitioner had tried unsuccessfully to urinate. (*Id.* at 7-8.) The DHO was also presented at the hearing with a certification from the prison's clinical director that stated that Petitioner "has no medical conditions that would not allow him to provide a urine specimen in the two hour time frame." (*Id.* at 6.)

Based on the evidence provided, the DHO ultimately found Petitioner guilty of failing to provide the urine sample and sanctioned Petitioner with the loss of 41 days of good conduct time. (*Id.* at 3-4.) In reaching this conclusion, the DHO provided the following explanation:

> The specific evidence relied upon to support this [guilty] finding was the eyewitness account of the reporting staff member that on February 3rd, 2022, [that he] was in [Petitioner's] unit conducting urinalyses testing, at approximately 1830 hours, [Petitioner] was informed that he had been selected for a random urinalyses. He was informed at that time that he had two hours from the time the test was requested by staff to produce a sample, or an incident report would have to be written for refusing a urinalyses. [Petitioner] was given multiple attempts to produce a sample, over the course of the

2

> allotted two hour time limit, but failed to produce a sample. At approximately 2020 hours, [Petitioner] was escorted . . . to the Lieutenant's office, and given one final attempt to produce a urine sample. At [a]pproximately 2030 hours, [Petitioner] had failed to produce a sample, and the allotted two hour time limit had elapsed. Health Services was contacted, and they advised that [Petitioner] had no known medical condition that would impede him from producing a urine sample. . . The DHO considered the medical memorandum provided by [medical] that states [that] after reviewing your medical chart, you do not have any medical conditions that would not allow you to provide a urine specimen.
>
> In [his] defense [Petitioner] stated, "I don't do drugs. I never used drugs. I can't urinate because of anxiety. I've had this problem at another institution. I've been to medical about this." Your witness[es] . . . wrote in [their] written statement that you have problems urinating because you have anxiety [and] you take medication that prevents you from urinating and the staff member conducting the urinalysis was gay and[] that played a part in [Petitioner's] ability to urinate. The DHO took [Petitioner's] statement and the statements of [his] witnesses into consideration and[] gave greater weight to the medical memorandum provided by [a doctor] who has the medical expertise to identify any medical conditions in your medical chart that would prevent you from taking the urinalysis.
>
> Based upon the eyewitness account of the reporting officer and the supporting medical memorandum, the DHO finds the greater weight of the evidence indicates [Petitioner] did commit the prohibited act[.]

(ECF No. 5-7 at 3-4.) Petitioner appealed, but his sanctions were upheld throughout the appeals process. (ECF No. 5-3.)

Petitioner now seeks to dispute the medical certification relied upon by the DHO at his hearing. In support of his dispute, Petitioner points to certain medical records including an incident in which he sought help with urinary issues in March 2022 a month after his hearing had concluded (ECF No. 1-1 at 13-15), sick call requests Petitioner entered after being charged (ECF No. 1-1 at 16-18), a medical order entered on September 2, 2022, seven months after his disciplinary hearing requesting Petitioner be given four hours to provide urine samples in future testing (ECF No. 6-2

3

at 1), and a medical report for a medical visit in May 2021 during which he reported medication he was then taking which made him "have to constantly urinate" for which he requested a medication change. (ECF No. 6-2 at 6.) The records Petitioner submits are thus largely extraneous to his status and ability to timely urinate on the date in question as they concern medical visits conducted only *after* his being charged and undergoing discipline, or reference a situation a year beforehand when he had the exact opposite issue. Other than petitioner's own self reporting of trouble urinating, the record thus has no direct medical evidence which contradicts the medical certification considered at the disciplinary hearing.

## II.   **LEGAL STANDARD**

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.   **DISCUSSION**

In his habeas petition, Petitioner contends that the DHO denied him Due Process and wrongly found him guilty of violating prison policy. Petitioner also contends that requiring him to urinate on demand amounts to cruel and unusual punishment. Because federal prisoners have a statutorily created liberty interest in good time credits they receive during their imprisonment, prisoners have Due Process rights which may not be impugned during prison disciplinary hearings resulting in the loss of such credits. *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Those rights include at least

twenty-four hours advance written notice of the charges, an opportunity to call witnesses and present documentary evidence where relevant, assistance from an inmate representative if the charges are complex or the petitioner is illiterate, and a written decision explaining the evidence relied upon and the reasons for the disciplinary action. *Id.*; *See also Wolff*, 418 U.S. at 563-67. Technical errors, such as a failure to meet the requirements of standard BOP procedure will not provide a basis for habeas relief, and any alleged denial of Due Process will suffice to overturn a disciplinary proceeding only where those errors were, in fact, prejudicial. *See Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (citing *Wilson v. Ashcroft*, 350 F.3d 377, 380-81 (3d Cir. 2003); *see also Obiegu v. Werlinger*, 488 F. App'x 585, 586 (3d Cir. 2012). Where a prisoner's rights have been respected, a prison disciplinary finding will stand on habeas review so long as it is supported by "some evidence in the record." *Campbell*, 808 F. App'x at 72 (quoting *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985)). This standard "is minimal and 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." *Id.*(quoting *Hill*, 472 U.S. at 455).

    In this matter, Petitioner clearly received notice of the charges the day after the incident, was provided an opportunity to request witnesses and submit statements by his proposed witnesses, as well as his own statement, and declined a staff representative. He received a preliminary hearing before the UDC, and a final hearing before a DHO, and was provided a statement of reasons for the DHO's decision. Thus, Petitioner received all of the procedural protections to which he is due, and his Due Process rights were not violated during the prison disciplinary proceedings. Turning to the decision of the DHO, clearly it was supported by "some evidence" in the record. It was not in dispute that Plaintiff failed to provide the required sample within the two hour window, and the medical certification provided by prison medical staff indicated that Petitioner had no medical issues which would preclude a timely sample. Even in the face of Petitioner's counter statement,

there was sufficient evidence in the record for the DHO's findings to survive a habeas challenge. *See Void v. Warden Fort Dix FCI*, 345 F. App'x 818, 820 (3d Cir. 2009) (inmates failure to provide urine sample within two hour window sufficient to support even harsh disciplinary sanction in case where sample was provided only fifteen minutes late). Finally, Petitioner's punishment was well within the range set forth for the violation in question, and he was not subjected to overly harsh punishment. *See* 28 C.F.R. § 541.3(b) (setting forth appropriate punishments including up to 41 days loss of good conduct time); *see also Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012) (punishment within standard regulatory limits for prison infraction does not impugn Due Process). Petitioner has not shown that he was denied Due Process during his disciplinary hearing, and his habeas challenge to the sanctions imposed at that hearing is therefore denied.

In a related claim, Petitioner asserts that he was denied Due Process not in his hearing, but instead when staff held him to the two hour limit and did not provide him additional time which Petitioner believes violates the BOP's applicable policies. Even were that true, "an agency's alleged failure to adhere to its own policies or guidelines does not state a due process claim" where a prisoner is afforded all the required protections during prison disciplinary proceedings. *Julick v. Snyder-Norris*, No. 16-107, 2016 WL 6246792, at *8 (E.D. Ky. Oct. 25, 2016) (citing *Cleveland Bd. Of Educ v. Loudermill*, 470 U.S. 532, 541 (1985)). Here, Petitioner has not shown that he clearly had documented medical issues which would have entitled him to a longer window of time, and the certification provided by the medical staff suggests entirely to the contrary. Indeed, the medical records Petitioner provides indicate that prior to the February 2022 incident, his medical issues had been the exact opposite problem – a constant need to urinate rather than an inability to do so. All the records Petitioner provides suggesting urination issues instead occurred *after* his failure to provide his sample, and do not indicate that BOP staff should have provided him with more time in light of his medical history. Based on the evidence in the record, this Court cannot

6

find a Due Process violation as it does not appear Petitioner's medical records contained a condition that would have prevented timely urination, and because a violation of the bureau policy on extended time frames would in any event not serve as a basis for a Due Process claim warranting habeas relief. *Id.*; *see also Void*, 345 F. App'x at 820-21 (failure to provide inmate with more time to urinate does not impugn Due Process in the absent of clear medical records indicating a need for more time at the time of the infraction). This claim, too, must be denied.

In his final claim, Petitioner asserts that requiring him to urinate on command on pain of punishment amounts to cruel and unusual punishment in violation of his Eighth Amendment rights. Even if this Court had clear jurisdiction[1] to consider such a claim in a habeas petition, rather than a prisoner civil rights context, it is clear that requiring prisoners to provide a urine sample is not so atypical or significant a hardship that it would provide a basis for an Eighth Amendment claim. *See, e.g., Smith v. Carver*, No. 07-575, 2008 WL 436911, at *7 (E.D. Pa. Feb. 15, 2008) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *see also Burgos v. Canino*, 641 F. Supp. 2d 443, 461 (E.D. Pa.) (random urine testing serves a legitimate government interest and is not an unreasonable intrusion into a prisoner's life sufficient to violate constitutional rights), *aff'd*, 358 F. App'x 302 (3d Cir. 2009). Subjecting Petitioner to random urinalysis blood screening thus does not amount to cruel and unusual punishment. As all of Petitioner's claims are therefore without merit, Petitioner's habeas petition is denied.

---

[1] Outside of certain very limited exceptions wherein emergency conditions might require the release of an incarcerated individual, such as a non-criminal immigration detainee held during a pandemic subjected to high risk of infection, courts in this circuit have been hesitant to recognize a cognizable habeas claim based on a prisoner's conditions of confinement. *See Goodchild v. Ortiz*, No. 21-790, 2021 WL 3914300, at *15-16 (D.N.J. Sept. 1, 2021) (collecting cases). Generally, such claims must instead be brought through a civil rights action, especially where the only proper relief for such a claim does not include release or another suitable form of habeas relief. *Id.* It is thus doubtful that this Court would have jurisdiction to grant Petitioner relief as to his cruel and unusual punishment claim were it of sufficient merit to warrant consideration.

## IV.　CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED.** An order consistent with this Opinion will be entered.

                         _____
                         Hon. Karen M. Williams,
                         United States District Judge